**JONATHAN MARKS, P.C.**
ATTORNEY AT LAW
220 FIFTH AVENUE
3RD FLOOR
NEW YORK, NY 10001

E-MAIL: jon@jonmarks.com                                    TEL: (212) 545-8008
URL: jonmarks.com                                           FAX: (212) 889-3595

December 10, 2004

Honorable Sterling Johnson, Jr.
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:    United States v. Mohamed Al-Moayad, et. al.
       Criminal Docket No. 03-1322 (SJ)

Dear Judge Johnson:

I respectfully submit this letter memorandum in reply to the Government's Memorandum of Law in Opposition to Defendants' Motion to Redact English Portions of Tape-Recorded Conversations.

The Government's argues that the English portions of the recordings should be admitted because (a) defendant Al-Moayad speaks and understands English; (2) CI-1's translations are accurate; and (3) the English is an integral part of the conversations. As we show below, Al-Moayad did not speak or understand English at the time the recordings were made; in any event, it is uncontested that Zayed did not understand English. Significant portions of the translations are grossly inaccurate and unfairly prejudicial; and the English is superfluous to the conversation with the defendants, all of which was conducted in Arabic.

The Government's claim that failing to include the English portions of the transcripts would be confusing is belied by the fact that, until recently, none of the many draft transcripts provided to the defense contained any English at all. All of the English was redacted. It is much easier to follow the actual conversation with the defendants, all of which was in Arabic, without the distraction of the English-language cross-talk between the two informants. Including the English would be confusing to the jury since, as we show, below, neither defendant could understand it.

Honorable Sterling Johnson, Jr.                          December 10, 2004
United States District Judge
Page 2

Moreover, including the English-language portions of the conversations, many of which were mistranslated by Alanssi, would greatly increase the length of the trial.  It would be necessary to translate all of the English into Arabic for the benefit of the defendants.  Without such a translation, the defendants would not be able to understand what the jury was hearing.  Since Alanssi's translations are inaccurate, it would be extremely misleading to the defendants to rely solely on those mistranslations.

<u>Neither Zayed nor Al-Moayad understands English</u>

It is uncontested that Zayed could not understand the English portions of the recorded conversations.  He would be grossly prejudiced by permitting the jury to hear them.  As shown in the attached affidavits of Al-Moayad and Fouad Elsheikh, Al-Moayad could not understand English either.  The Government's showing that Al-Moayad knew the words "radio," television," "Saudi Arabia," and "Yemen" is hardly persuasive.  As shown in the Al-Moayad's affidavit, a note he wrote to the MDC in English was written with the assistance of an English speaker.  In any event, if the English were introduced, Zayed would be greatly prejudiced.  Should the Court rule for the Government, Zayed requests a severance.

<u>The Translations are Highly Inaccurate and Prejudicial</u>

The following portion of the transcript of  January 9 illustrates the misleading nature of Alanssi's so-called translations:

CI-1:        Now the question directed to you.  Do you have a Ba'ya [TN: sworn to give your life to the sheikh] to the sheikh?  Do you know what Ba-ya is?

MOAYAD: Yes.

\*       \*       \*

ZAYED:     Yeah, we have the Ba'ya.

Honorable Sterling Johnson, Jr.                    December 10, 2004
United States District Judge
Page 3


CI-1:        That means I can depend on you as well, by giving you money and it's agreed upon where that money will be spent?

MOAYAD: God willing.

CI-1:        God willing.

ZAYED:      And God will bless us and [UI]

CI-1:        I ask you a question now.  Where will you use my money?

ZAYED:      In God's hands if He is willing.

ZAYED:      It's on my conscience [UI]

CI-1:        Of course you'll put it where he tells you to put it and the rest if [sic] up to God.

MOAYAD: We'll do what we can.

CI-1:        Yes. **He said we are going to put the money as you are going to tell him, but we are going to pray to the God to fulfill this how to spend the money.**

Gov. Ex. 4. pp. 15-16.

     This portion of the transcript demonstrates the prejudice that would flow from introducing the English into evidence.  Alanssi's English statement is not a translation at all.  It is a gratuitous and prejudicial remark misrepresenting what the defendants said.

     In a particularly egregious misrepresentation of what Moayad says, the following took place:

Honorable Sterling Johnson, Jr.                    December 10, 2004
United States District Judge
Page 4

CI-1:          He [CI-2] said that we hope that it will happen where the Jews are, or at our place in America.  So do you have any plans regarding that?  Or are you preparing anything?

MOAYAD: I don't have any plans yet.  I don't have anything but I want to rearrange matters and situations.

 CI-1:          Yes God willing.  **He said until now, we don't know but they are going to start planning where it going to be done.**

(Gov. Ex. 5, pp.  6-7).

A reading of the record shows that Moayad never said that they would start planning where it [the attack] will take place.  Alanssi made this up for the benefit of the FBI agents listening to the conversation and, perhaps, the jury.  The Government should not be permitted to present this irrelevant, prejudicial and non-probative evidence.

In some instances, CI-2 makes prejudicial statements in English, which Alanssi does not translate.  For example, CI-2 states that "there are individuals in my organization . . . . [who] are warriors. . . ."  Alanssi omits the reference to warriors in his muddled translation.  (Ex. 4, p 30).  If the CI-2's English statement were admitted, it would contain prejudicial and confusing information, which the defendants could not understand.

There are many other instances of Alanssi's mistranslations.  For example:

CI-1:          Of course, it's all for the Jihad for the sake of Allah.  He says the students, for example, he doesn't have the money for them to train on the computer, for different languages, in very specific training with Hamas, military kind of training on weapons . . . Jihad with bombs, weaponry, and all types of weapons . . .

MOAYAD: We can discuss this with our brother in Hamas, of course.

Honorable Sterling Johnson, Jr.                          December 10, 2004
United States District Judge
Page 5

> ZAYED:     Until we see their circumstances, their circumstances.

Alanssi embellishes by telling CI-2 in English:

> CI-1:     **He said, of course, all the training which we are talking, he is going he said it is perfect, but also he is going to tell these things to Hamas.**

(Ex. 4, pp. 32-33.)

In fact, Moayad never said it was perfect and never said he would "tell these things to Hamas," only that "we can discuss this with" Hamas.

(Gov. Ex. 4, pp. 33-34)

> <u>The Actual Conversations with the Defendants can be best understood without the English</u>

Until recently, all of the Government transcripts have quite properly redacted the English portions of the conversations. Those portions are entirely superfluous to the give-and-take with the defendants. The conversation between the two informers is not probative. It should be redacted.

<u>Conclusion</u>

For the reasons set forth above, defendants' motion should be granted in full.

Respectfully submitted,

/s/ Jmarks

Jonathan Marks

cc:   Kelly Moore, Esq.
      Pamela Chen, Esq.
      Howard Jacobs, Esq.
Enc.