The Honorable Sterling Johnson, Jr.
United States District Judge
Eastern District of New York
United States Courthouse
225 Cadman Plaza East
Brooklyn, NY 11201

April 11, 2005

    Re: United States v. Al-Moayad and Zayed
       Criminal Docket No. 03-1322

Dear Judge Johnson:

  Defendants Mohammed Mohsen Yahya Zayed ("Zayed") and Mohammed Ali Hassan Al-Moayad ("Moayad") respectfully submit this letter memorandum in support of their motion under Fed. R. Crim. P. 34 to arrest the jury's verdict with respect to Counts 3, 4, and 6 of the Superseding Indictment (the "Indictment") as to defendant Al-Moayad and Counts 3 and 6 as to defendant Zayed on the ground that the court does not have jurisdiction of the charged offenses. These counts relate to the defendants' alleged activities in support of Hamas. Zayed and Moayad argue in this submission that the purely extraterritorial conduct upon which they were convicted with respect to the Hamas-related counts violates the Due Process Clause of the Fifth Amendment.

  In addition, defendant Zayed renews his motion for a judgment of acquittal under Fed. R. Crim. P. 29 with respect of Counts 1 and 6 on the ground that the evidence was insufficient to sustain the convictions. [1]

I. The Convictions

  Both defendants were convicted of conspiring to provide material support and resources to a foreign terrorist organization, specifically, Al Qaeda (Count 1), conspiring to provide material support and resources to a foreign terrorist organization, specifically, Hamas (Count 2), and attempting to provide material

---

[1] The motions are timely because immediately upon the return of the jury's verdicts both defendants moved for an extension of the time in which to make post-trial motions to the 30th day. The Court granted the request.

support and resources to a foreign terrorist, specifically, Hamas (Count 6). In addition, defendant Al-Moayad alone was convicted of providing material support and resources to a foreign terrorist organization, specifically, Hamas (Count 4) and attempting to provide material support and resources to a foreign terrorist, specifically, Al Qaeda (Count 5).

II.     The Purely Extraterritorial Nature Of The Defendants' Conduct

Each Count of the Indictment alleged that the defendants engaged in conduct "within the Eastern District of New York and elsewhere. . .together with others. . ." to commit the alleged offenses. The government simply did not prove this part of its case. The evidence adduced at trial, however, demonstrated that the conduct giving rise to the convictions occurred exclusively outside of the United States, in Germany and in Yemen.

While 18 U.S.C. §2339B(a)(2)(d) provides "[t]here is extraterritorial Federal jurisdiction over an offense under this section[,]" as set forth immediately below, this provision's applicability is limited by constitutional due process mandates.

III.    The Due Process Clause Requires Dismissal Of The Hamas-Related Counts

A.     *United States v. Yousef*

Prior to the ruling in *United States v. Yousef,* 327 F.3d 56 (2d Cir. 2003), cert den. 540 U.S. 933 (2003), the law was unsettled in this Circuit over whether or not the Due Process Clause acts as a jurisdictional limitation on criminal prosecution of acts occurring outside of the United States. Ruling that it does, the *Yousef* Court ruled that "in order to apply extraterritorially a federal criminal statute consistently with due process, there must be a sufficient nexus between the defendant and the United States, so that such application would not be arbitrary or fundamentally unfair." *Id.* at 111, *quoting United States v. Davis,* 905 F.2d 245, 248-49 (9th Cir. 1990).

*Yousef* involved a conspiracy to bomb U.S. aircraft flying overseas, as well as the bombing of a Philippine airliner in preparation for the broader plot to destroy American airliners. The Second Circuit ruled that "[g]iven the substantial intended effect of their attack on the United States and its citizens, it cannot be argued

seriously that the defendants' conduct was so unrelated to American interests as to render their prosecution in the United States arbitrary or fundamentally unfair." *Id.*

    B.    *Prosecution on the Hamas-Related Counts Violate Due Process*

        1.    *Yousef Distinguished*

The differences between the convictions in *Yousef* and the convictions on the Hamas-related counts at bar are facially striking. No evidence was offered at trial that Hamas has attacked or intends to attack United States interests. Nor was any evidence offered that Hamas has intentionally attacked U.S. citizens.

To be sure, Hamas is an enemy of Israel, a U.S. ally. But such allegiance does not make it fundamentally fair that the defendants should stand trial and serve a substantial portion of their lives in U.S. prison for plotting against Israeli interests.

        2.    *It Is Fundamentally Unfair To Prosecute The Defendants In The United States For Threatening Israeli Interests, When The Penalty In The U.S. Is Five Times More Severe Than Under Israeli Law*

Were the defendants to have been tried in Israel for conspiring to aid Hamas, they could expect a substantially lighter sanction. Specifically, §4(d) of the Israeli Prevention Ordinance of 1948 provides:

> A person who. . .gives money or money's worth for the benefit of a terrorist organization. . .shall be guilty of an offence and shall be liable on conviction for a term not exceeding three years or to a fine not exceeding one

thousand pounds or both to such penalties.[2]

The provisions of U.S. Law are five (5) times more onerous than Israeli Law and provide for a maximum fifteen (15) year sentence for providing material support to a terrorist organization under 18 U.S.C. § 2339B(a)(1). It is irreconcilable with due process for the defendants to be tried in the United States for acts committed extraterritorially affecting Israel, only to be subject to a draconian criminal sanction not found in Israeli law.

> 3. *International Law Informs The Due Process Analysis, And Does Not Support The Imposition of Extraterritorial Jurisdiction Over the Hamas-Related Counts*

Moreover, this Court lacks jurisdiction over the Hamas-related counts under an analysis of applicable principles of international law. The Supreme Court has recently ruled that international law may be "instructive" in determining the boundaries of permissible conduct under the U.S. Constitution. *Roper v. Simmons*, 543 U.S. _____ (2005), No. 03-633, Slip Op. at 21. *See also* Lea Brilmayer & Charles Norchi, Federal Extraterritoriality and Fifth Amendment Due Process, Harv. L. Rev. 1217, 1244 (1992) ("Brilmayer & Norchi") (specifically discussing international law as aid in due process analysis where extraterritorial criminal jurisdiction is implicated).[3]

The *Yousef* Court explicated the several means recognized under customary international law for a state to assert extraterritorial jurisdiction, as follows:

---

[2] Available at:

www.mfa.gov.il/MFA/MFAArchive/1900_1949/Prevention%20of%20Terrorism%20Ordinance%20No%2033%20of%20570819

In citing to this section, we are not admitting that defendants are in violation of Israeli Law.

[3] The *Yousef* Court ruled that international law does not override a federal statut*e* granting the district courts extraterritorial jurisdiction. We take no issue with this ruling, and argue, instead, that international law is one consideration informing the due process analysis, as adopted in *Roper v. Simons, supra.*

4

> Customary international law recognizes five bases on which a State may exercise criminal jurisdiction over a citizen or non-citizen for acts committed outside of the prosecuting State. These five well-recognized bases of criminal jurisdiction are: (1) "the objective territorial principle," which provides for jurisdiction committed outside a State's borders that has, or is intended to have, a substantial effect within its territory; (2) the "nationality principle," which provides for jurisdiction over extraterritorial acts committed by a State's own citizen; (3) the "protective principle," which provides for jurisdiction over acts committed outside the State that harm the State's interests; (4) the "passive personality principle" which provides for jurisdiction over acts that harm a State's citizens abroad; and (5) the "universality principle," which provides for jurisdiction over extraterritorial acts by a citizen or non-citizen that are so heinous as to be universally condemned by all civilized nations.

327 F.3d at 91, n.24. *See also* Brilmayer & Norchi, *supra* at 1245.

Extraterritorial jurisdiction over the defendants is not supported under any of the five enumerated theories. First, the "objective territorial principle" is inapplicable because the support offered to Hamas in Germany did not have, nor was it intended to have, a substantial effect within U.S. territory, as distinct from Israeli territory. Moreover, despite the allegations in the Indictment, there is no evidence in the record that any conspiratorial acts occurred within the United States.

Second, the "nationality principle" is inapplicable as Zayed and Moayad are not U.S. nationals. the nationality theory does not provide a basis for federal jurisdiction.

Third, the "protective principle" is not seriously implicated. The *Yousef* Court elaborated on its definition of this theory, by stating:.

> The protective (or "security") principle permits a State to assume jurisdiction over non-nationals for acts done abroad which affect the security of the State. The protective principle is generally invoked to

5

>obtain jurisdiction over politically motivated acts but is not limited to acts with a political purpose.

*Yousef,* 327 F.3d at 110. *See also Brilmayer & Norchi, supra* at 1245. As with the "objective territorial principle," there is no evidence that Hamas has ever attacked or planned to attack interests of the United States. There activities are directed against Israel.

Fourth, the "passive personality principle" does not support extraterritorial jurisdiction with respect to the Hamas-related counts simply because American nationals may be unintended victims of attacks against Israeli interests. *See Brilmayer & Norchi, supra* at 1251-52 (arguing jurisdictional nexus not presence for due process purposes where harm to U.S. nationals occurs by happenstance rather than intent). Indeed, in *Yousef,* the Second Circuit did not find the "passive personality" principle to be implicated with respect to the Count charging the *Yousef* defendants with the bombing of a Philippine Airliner flying between destinations outside of the United States, because "there is no evidence that any United States citizens were aboard the flight or were targets of the bombing." *Yousef,* 327 F.3d at 97. (Jurisdiction over this Count was ultimately found under U.S. law implementing treaty obligations.)

Implicitly, the Court left for another day the question of whether the passive-personality principle is implicated by the unintended injury to a U.S. citizen. Even assuming that Hamas has injured U.S. nationals, we maintain that it is inconsistent with fundamental fairness concerns embedded in due process to subject a foreign defendant to U.S. jurisdiction based upon unintended consequences of acts aimed against non-U.S. interests.

Finally, the *Yousef* Court concluded that an international consensus has not yet been formed that "terrorism" is the subject of "universal jurisdiction." *Id.* at 103-108.

*Conclusion*

For the foregoing reasons, the jury's verdict with respect to Counts 3, 4, and 6 should be vacated and a judgment of acquittal entered.

IV. The Evidence Against defendant Zayed was Insufficient to Sustain Convictions on Counts 1 and 6.

Notwithstanding the jury's verdict finding Zayed guilty of conspiring to provide material support and resources to Al Qaeda (Count 1), there was insufficient evidence that Zayed conspired with Al-Moayad to provide such support. At no time did Zayed agree to help Al Qaeda. When the subject of Al Qaeda was raised in the recorded conversations, Zayed remained silent.

The evidence as to Count 6 was insufficient to sustain the conviction inasmuch as there was simply no evidence that Zayed took a substantial step to further the completion of the crime.

*Conclusion*

For these reasons, pursuant to Fed. R. Crim. P. 29, defendant Zayed submits that a judgment of acquittal should issue as to Counts 1 and 6 on the ground that the evidence was insufficient to sustain the convictions.

                    Respectfully submitted,


                    Jonathan Marks (JM-9696)

cc:    Kelly Moore, Esq.
       Pamela Chen, Esq.
       Jeffrey Knox, Esq.
       William Goodman, Esq.